

333 EARLE OVINGTON BLVD, STE 402
UNIONDALE, NEW YORK 11553
T: 516-203-7600
F: 516-282-7878

October 20, 2023

**VIA ECF**

The Honorable Lorna G. Schofield
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:     *Lynk Media, LLC v. Insider Media Group,* 1:23-cv-07117 (LGS)


Dear Judge Schofield:

We represent plaintiff Lynk Media, LLC ("Plaintiff") in the above-referenced matter and write in response to defendant Insider Media Group ("Defendant")'s proposed motion to dismiss the complaint under Rule 12(b)(6).  For the following reasons, the Court should discourage Defendant from filing such a motion as futile given the myriad questions of disputed fact which go beyond the four corners of the pleadings and the existence of judicial precedent adverse to Defendant's position.

**Background**

Plaintiff is a professional videography company which owns the right to a copyrighted video depicting celebrity Bella Hadid marching at a Free Palestine protest in NYC ("Video").  An actual market existed for the Video because Plaintiff's predecessor-in-interest, FNTV LLC ("FNTV") licensed the Video to third party commercial media outlets such as Daily Mail, the New York Post and NowThis [Compl. ¶15]. Plaintiff acknowledges that the Video was uploaded to YouTube by FNTV.  On or about May 16, 2021, Defendant displayed the Video on its multiple commercial websites, including www.insider.com, without authorization from Plaintiff.

Defendant primarily argues that it can establish a sub-license defense as a matter of law pursuant to YouTube's Terms of Service on grounds of embedding.  Defendant also claims that certain alleged infringements are not actionable since Defendant does not control the infringing websites www.businessinsider.com.au and www.sports.yahoo.com.

<u>Point I:</u>          **Defendant Cannot Plausibly Establish its Affirmative Defense of Sub-License At This Stage of the Proceeding**

Under Second Circuit law, "the existence of a license is treated as an affirmative defense, meaning that [defendant] ha[s] the burden to prove its existence." *Sohm v. Scholastic Inc.,* 959 F.3d 39, 42 (2d Cir. 2020). In the context of social media use, attempts in this District to establish a sub-license defense on the face of the pleadings have been consistently rejected. In



333 EARLE OVINGTON BLVD, STE 402
UNIONDALE, NEW YORK 11553
T: 516-203-7600
F: 516-282-7878

*Sinclair v. Ziff Davis, LLC*, No. 18-CV-790 (KMW), 2020 WL 3450136, at *1 (S.D.N.Y. June 24, 2020), the Honorable Kimba M. Wood held that the pleadings contained insufficient evidence to find that Instagram granted the defendant a sublicense to embed plaintiff's photograph on its website.  In reaching this holding, the court determined that Instagram's terms of service were open to multiple interpretations and that such terms were "insufficiently clear to warrant dismissal of Plaintiff's claims at this stage of litigation." Similarly, in *McGucken v. Newsweek LLC*, 19-CV-9617, 2020 WL 2836427, at *4–5 (S.D.N.Y. June 1, 2020), the Honorable Katherine Polk Failla determined that she could not rule as a matter of law that defendant had a sub-license to embed content under Instagram's terms of service because of the multiple policy terms that would need to deciphered, the limited review permitted on Rule 12(b)(6), and the reasonable inferences to be drawn in plaintiff's favor.

Although this case involves allegations relating to YouTube's terms of service,[1] rather than Instagram, Defendant neglects to point out that by using YouTube's embed tools, YouTube requires that Defendant must not only comply with YouTube's general terms of service, but at least <u>four</u> different policies, terms and guidelines to embed content, including YouTube API Services Terms of Service (the "API Terms") (https://developers.google.com/youtube/terms/api-services-terms-of-service), YouTube's Developer Policies https://developers.google.com/youtube/terms/developer-policies); YouTube's Content Manager Policies (https://support.google.com/youtube/answer/9142671), and YouTube's Community Guidelines (https://www.youtube.com/about/policies/#community-guidelines).  Indeed, as illustrated below, when Defendant selected the embed function, it received a written warning that by embedding content to a third-party website, it would need to strictly comply with the API Terms.



Even if the Court were to venture an interpretation and somehow reconcile all these various terms and guidelines in order to construct the existence of a sub-license, questions of fact would remain as to whether Defendant actually complied with the stringent requirements to

---

[1] Although Defendant fails to specify, the Terms of Service cited by Defendant in its opening letter appear to have been adopted in 2022, subsequent to the date of the alleged infringement in 2021, and therefore questions of fact arise as which terms of service actually govern this dispute.



333 EARLE OVINGTON BLVD, STE 402
UNIONDALE, NEW YORK 11553
T: 516-203-7600
F: 516-282-7878

embed third-party content outside of YouTube's platform. For example, Section 12 of the API Terms specifically provide that with respect to "Third-Party Rights", "You and your API Client(s) will not, and you will require those acting on your behalf and your users to not, infringe or violate third-party rights, including intellectual property rights…" Such a term stands in direct contradiction to the existence of a sub-license as it implies that Defendant would require permission directly from the copyright holder in order to embed content outside of YouTube's platform.  It is also notable that FNTV provided notice on its YouTube channel to contact it for licensing inquiries which Defendant completely ignored.

Furthermore, even if the Court were to determine that direct permission from the copyright holder was not required for embedding to third-party websites, Defendant would still be required to establish, beyond the preponderance of the evidence, that it complied with certain Developer terms and conditions required for embedding, such as displaying a link to YouTube's Terms of Service on Defendant's third-party websites, instructing users of Defendant's third-party websites that they are agreeing to be bound by the YouTube Terms of Service, and requiring users of Defendant's third-party websites to agree to a privacy policy before users can access the embedded content, among other requirements specified in the API Terms.  *See* YouTube API Services – Developer Policies, Section III.A "API Client Terms of Use and Privacy Policies" (https://developers.google.com/youtube/terms/developer-policies).
There is no evidence on the record that Defendant complied with *any* of these requirements. The Court would need to convert the proposed Rule 12 motion to Rule 56 in order to resolve these issues, and Plaintiff respectfully submits that such conversion is premature. Discovery will be necessary particularly given that the infringing site has been modified since Plaintiff filed suit, as the alleged embed has been disabled.

In short, it is not reasonable for Defendant to tax the Court's resources at this stage of litigation to resolve these issues without a fully developed factual record.

**Point II:**      **Plaintiff Will Consider Withdrawing its Allegations Pertaining to Infringing Websites Not Controlled by Defendant**

With respect to Defendant's assertion that it does not control or otherwise supervise the websites www.businessinsider.com.au and www.sports.yahoo.com, Plaintiff believes that further discovery is needed on these issues.  In any event, these additional websites are not dispositive to the lawsuit and Plaintiff is amenable to withdrawing these allegations upon further investigation. We do not believe motion practice is needed to resolve this issue and can instead be resolved via stipulation once the necessary information is produced by Defendant.

**Point III:**      **Plaintiff Will Seek its Attorneys' Fees if Court Denies Defendant's Motion**

Given the existence of judicial precedent adverse to Defendant's position (which Defendant fails to bring to the Court's attention), and complete absence of any judicial precedent in support, coupled with Defendant's failure to cite the applicable terms of service germane to this dispute, Plaintiff regards the proposed motion as a delay tactic rather than a *bona fide* attempt to resolve a meritorious dispute and will therefore seeks its fees for opposing the motion.



333 EARLE OVINGTON BLVD, STE 402
UNIONDALE, NEW YORK 11553
T: 516-203-7600
F: 516-282-7878

Respectfully Submitted,

s/ *James H Freeman* /
James H. Freeman

*Counsel for Plaintiff*